# SANBORN *v.* CLOUGH.

A committee to make partition of land known as the "Thomas Clough purchase," between heirs, set off to No. 7 as follows: Beginning at the south-east corner, and running north "to the south-east corner of the fourth division lot, No. 70; thence westerly, on the divisional line between said purchase and said lot, so far as to make seventy-six rods directly west from said corner, to a stake and stones;" thence south, &c.; and to No. 8 as follows: Beginning at the south-west corner of No. 7, thence north, &c., to said stake and stones, as "the north-west corner of share No. 7; thence westerly, on the line of said purchase, to the one hundred acre lot No. 3;" then southerly, &c., and made report accordingly.—*Held*, that the phrase, "so far as to make seventy-six rods directly west from said corner," has reference rather to the width of lot 7, at the north end, than to the location of the stake and stones, and that said stake must be in said divisional line, whatever its direction

from said corner of lot 70.—*Held,* also, that evidence to prove that the committee ran out and established a line as the north line of said Clough purchase, and fixed bounds there, which bounds and line are some distance south of the true corners and line between said purchase and said lot 70, and that said committee made their partition upon and according to that line and those bounds, and intended to bind the heirs by that line instead of the divisional line between said lots, is inadmissible, as tending directly to contradict the terms of the report.

TRESPASS *quare clausum,* brought by E. B. S. Sanborn and others against Philip C. Clough and others. The case was submitted to the court upon the following agreed statement of facts :

The *locus in quo* is a tract of wild land in Canterbury, of about twelve acres. In 1823 a committee, appointed by the probate court for that purpose, made partition of certain portions of the real estate of Nehemiah Clough, deceased, among his eight heirs. A copy of their report, so far as relates to portions No. 7, set off to Cyrus Clough, and No. 8, set off to the defendant, P. C. Clough, is as follows :

" No. 7 is set off to Cyrus Clough, being part of the Thomas Clough purchase, so called, beginning at the east corner of the one hundred acre lot No. 1 ; then north, three hundred and one rods, to the south-east corner of the fourth division, lot No. 70 ; then westerly, on the divisional line between said purchase and said lot, so far as to make seventy-six rods directly west from said corner, to a stake and stones ; then south, two and one half degrees east, so far as to strike the line of the said one hundred acre lot No. 1, to a white oak marked ; then south-east by the line of said lot to the first mentioned bound, containing one hundred and fifteen acres, more or less."

" No. 8 is set off to Philip C. Clough, being part of the Thomas Clough purchase, so called ; beginning on the line of one hundred acre lot numbered one, at a white oak, being the south-west corner bound of share numbered seven ; then running north two and one half degrees west,

to the north-west corner of share numbered seven, set off to Cyrus Clough; then westerly, on the line of said purchase, to the one hundred acre lot numbered three; then southerly on the line of said lot numbered three, to the one hundred acre lot numbered two; then south-east on the line of lot No. 2 ninety rods; then north-east ten rods, then south-east sixty-six rods, to the first bound, containing one hundred and nineteen acres, more or less."

The plaintiffs claim title by intermediate conveyances under a warrantee deed from the defendant Clough to Wm. P. Clough, in 1829, a copy of the descriptive portion of which deed is as follows:

" Beginning on the line of one hundred acre lot numbered one, at a white oak, being the south-west corner of share numbered seven, in the division of the estate of Nehemiah Clough, junior, deceased; then running north, two and a half degrees west, to the north-west corner of share numbered seven, set off to Cyrus Clough; then westerly on the line of the Thomas Clough purchase, so called, which this is a part thereof, to the one´hundred acre lot numbered three; thence southerly on the line of said lot numbered three, to the one hundred acre lot numbered two; thence south-east on the line of lot numbered two, seventy rods; thence north-east ten rods; then southeast sixty-six rods, to the first mentioned bound, containing one hundred and twenty acres, more or less, and is the same which fell to me as my share from the estate of my father, Nehemiah Clough, Jr., deceased."

The defendants propose to show, by parol evidence, that at the time the committee made partition among the heirs, as above stated, they made a survey of the real estate, run out and established lines and bounds for the different portions, and made partition accordingly; that the committee run out and established a line as the north line of the Thomas Clough purchase, and made partition accordingly. That line, thus claimed by the defendants, would not include the *locus in quo.*

The plaintiffs, admitting the above for the purposes of this case merely, claim that they, notwithstanding, are entitled, by the report of partition and the deed aforesaid, to hold up to a certain other line, which, for the purposes of this case merely, is admitted to be the true boundary line between the Clough purchase, before mentioned, and lot No. 70. The line thus claimed would include the *locus in quo*, which is the tract between the two lines before mentioned. Therefore it was agreed that the questions thus arising, as to the construction and effect of the partition and deed aforesaid, under the circumstances above stated, be transferred to the law term of this court for determination, which was done ; both parties reserving a right to a trial by the jury as to any matter herein stated, or any other, in any farther proceeding in the action in this court at its trial term.

*Bartlett* (with whom were *Pike & Barnard*, and *George & Foster*), for the plaintiffs.

1. By the partition, the land set off to Philip C. Clough extended northerly to the true north line of the Clough purchase, and the evidence offered by the defendants cannot be received. Upon a question of boundaries under a deed, parol evidence is only admissible to apply the description in the deed to the land, and for no other purpose. 1 Gr. Ev., secs. 275, 286, 288 ; Broom Leg. Max. 476 ; 4 C. &. H. Phill. Ev. 495, *et seq.*, 517 ; *Drew* v. *Drew*, 28 N. H. 494 ; *Webster* v. *Webster*, 33 N. H. 22 ; *Claremont* v. *Carlton*, 2 N. H. 372 ; *Attorney-General* v. *Clapham*, 31 E. L. & Eq. 142. If, upon such application, land is found answering generally to the description, but incorrectly described in some particulars, the law rejects the erroneous description, if enough remain to ascertain the land. 1 Gr. Ev. 301. But where, upon such application, there arises an ambiguity, because several objects answer equally well to the call of the deed, in such case, and in such only, is parol evidence of the intention of the parties admis-

sible. 4 C. & H. Phill. Ev. 534, 539; *Webster* v. *Atkinson,*
4 N. H. 23; *Linscott* v. *Fernald,* 5 Gr. 499; *Greenleaf* v.
*Kilton,* 11 N. H. 533; *Clough* v. *Bowman,* 15 N. H. 514.
What the boundaries are, in every other case, is a ques-
tion of law, to be determined solely from the deed applied
to the existing facts, and without resort to extrinsic evi-
dence of intention. 1 Gr. Ev. sec. 277; Broom Leg. Max.
478; *Waterman* v. *Johnson,* 13 Pick. 264; *Peaslee* v. *Gee,*
19 N. H. 278; *King* v. *King,* 7 Mass. 500; *Stone* v. *Clark,*
1 Met. 381; *Watson* v. *Boylston,* 5 Mass. 417; *Fletcher* v.
*Phelps,* 28 Vt. 257, 261; *Wellington* v. *Murdough,* 41 Me.
287. The law as to an actual location is but an applica-
tion of the principle first stated; for such a location is
merely the actual designation by the parties upon the
ground of the monuments, &c., called for by the deed. 4
C. & H. Phill. Ev. 549; Broom Leg. Max. 479; *Peaslee*
v. *Gee,* 19 N. H. 274; *Jenks* v. *Morgan,* 6 Gray 448;
*Wyne* v. *Alexander,* 7 Ire. 237; *Buckner* v. *Lawrence,* 1
Dougl. 19; *Hough* v. *Horn,* 4 Dev. & Bat. 228. Where
the description of the deed is clear, explicit, and free from
all ambiguity, what land passes by it is to be determined
solely from the deed. *Curtis* v. *Francis,* 9 Cush. 427;
*Child* v. *Wells,* 13 Pick. 124; *Cook* v. *Babcock,* 7 Cush.
526; *Cleaveland* v. *Flagg,* 4 Cush. 76; *Harlow* v. *Thomas,*
15 Pick. 68; *Pingry* v. *Wilkins,* 17 Vt. 377; *Storer* v.
*Freeman,* 6 Mass. 440; *Stevens* v. *Hollister,* 18 Vt. 294;
*Stone* v. *Clark,* 1 Met. 381; *Fletcher* v. *Phelps,* 28 Vt.
261. And where land answering to such description is
found, parol evidence cannot be received to control the
effect of the deed in passing such land according to the
terms of the deed. 4 C. & H. Phill. Ev. 523; *McAfferty*
v. *Conover,* 7 Ohio (N. S.) 94; *Bell* v. *Morse,* 6 N. H. 208;
*Brown* v. *Alden,* 43 Me. 600; *Locke* v. *Whiting,* 10 Pick.
279; *Lincoln* v. *Avery,* 1 Fairf. 418; *Butler* v. *Gale,* 1
Wms. 739; *Suyder* v. *Suyder,* 6 Binn. 483; *Cameron* v.
*Irwin,* 5 Hill 372; *Rich* v. *Elliott,* 10 Vt. 211. Here the

language of the report is clear, explicit, and free from all ambiguity; there are no inconsistent calls; the land answers perfectly to the description, and therefore must be held to pass, according to the terms of the report, to the line of the Clough purchase. The parol evidence offered shows no latent ambiguity; for it does not show two lines answering to the description of the report, but attempts to show a different line, not answering to that description. Nor is it competent to fix a monument called for by the report, for the monument is admitted; but the evidence is offered to contradict the report, by showing that not the monuments called for, but others, were intended. Nor can it be received to show an actual location; for it does not tend to fix the monuments of the report, but other and different ones. Even if the evidence could be received, the inference would be of a mistake in the line run, and not in the report. *Allen* v. *Kingsbury*, 16 Pick. 240; *Cleaveland* v. *Flagg*, 4 Cush. 76; *Tenney* v. *Beard*, 5 N. H. 62. Nor is it competent to show an agreed line; for, besides the objection that the deed merges all such cotemporaneous agreements (4 C. & H. Phill. Ev. 519; *Herbert* v. *Nutting*, 35 N. H. 126), it does not appear that there was in fact such an agreement, or that it has been executed. Nor can it be inferred; for those to whom the lot was set off are not shown to have known the line so run, and they would have no notice of it from the report, to which they are to look for the division (Comp. Stat. 424, sec. 3); and there has been no occupation accordingly. *Clough* v. *Bowman*, 15 N. H. 514; *Gray* v. *Berry*, 9 N. H. 477; *Enfield* v. *Day*, 7 N. H. 468. It is merely evidence to contradict the report, and to show that what it passes was not intended to pass. The reception of such evidence would be an entire subversion of the fundamental rule of the law as to parol evidence, and would unsettle the security of titles by record evidence; and so it has been held. *Jenks* v. *Morgan*, 6 Gray 448;

*Curtis* v. *Francis*, 9 Cush. 421; *Cook* v. *Babcock*, 7 Cush. 526; *Cleaveland* v. *Flagg*, 4 Cush. 76; *Knapp* v. *Marlborough*, 29 Vt. 282; *Linscott* v. *Fernald*, 5 Gr. 496; *Flagg* v. *Thurston*, 13 Pick. 150; *Allen* v. *Kingsbury*, 16 Pick. 236, 8; *Pride* v. *Lunt*, 1 Appl. 115; *Dawes* v. *Prentice*, 16 Pick. 435. As the evidence is incompetent to control the report, the land must pass according to the description, and by that the plaintiffs hold to the true line of the Clough purchase.

2. The defendant is estopped by his deed to deny the plaintiff's title. That deed bounds the land on the line of the Clough purchase. It does not refer to partition for a description of the premises; *Chesley* v. *Holmes*, 40 Me. 546; and, were there a reference to that, it could not govern the clear description. *Dana* v. *Bank*, 10 Met. 250. The defendant, having conveyed with warranty, is estopped to deny that the land described in the deed passed by it. 1 Smith L. C. 456; 1 Phill. Ev. 367; Rawle on Cov. 409, 410, 440; *Thorndike* v. *Norris*, 24 N. H. 454; *Brown* v. *Alden*, 43 Me. 600; *Bell* v. *Morse*, 6 N. H. 209; *Heard* v. *Hall*, 16 Pick. 461; *Bates* v. *Norcross*, 17 Pick. 21; *Corbett* v. *Norcross*, 35 N. H. 117; *Parker* v. *Smith*, 17 Mass. 415; *Wilkinson* v. *Scott*, 17 Mass. 237; *Kimball* v. *Blaisdell*, 5 N. H. 535; *Stowe* v. *Wyse*, 7 Conn. 214.

*Minot & Mugridge*, for the defendants.

1. Parol evidence is, in all cases, not only admissible but necessary to apply the description in a conveyance to the premises conveyed. In this case, then, parol evidence is admissible to show the location of the divisional line between the Clough purchase and lot No. 70, and of the other bounds mentioned in the partition. If it appeared that the divisional line had previously been clearly established, and was well known, it might be claimed as the line intended, and, therefore, to govern the location of the premises. *Enfield* v. *Day*, 11 N. H. 520. But that

does not appear; on the contrary, the circumstance that the line run by the committee as that divisional line was not that now claimed by the plaintiffs as the right line, shows that the latter could not then have been clear and known, otherwise that mistake would not have occurred; and the fact is, that the true location of that divisional line was uncertain, and so remained until established by referees several years after this partition. The committee, as the case states, run out the lines of the several shares, including the line referred to as the divisional line between the Clough purchase and lot No. 70. Parol evidence is admissible to show the location of the line thus run out. Parol evidence is admissible to show the practical construction of a deed by the parties, especially in cases of doubtful description. *Stone* v. *Clark*, 1 Met. 378, and cases cited. So, also, a practical location by the parties binds them. *Lerned* v. *Morrill*, 2 N. H. 197; *Smith* v. *Dodge*, 2 N. H. 303. And this, even though different from the description in the deed. *Prescott* v. *Hawkins*, 12 N. H. 26, 27; *Griffin* v. *Bixby*, 12 N. H. 454. See, also, *Bates* v. *Tymason*, 13 Wend. 300; *Whitehouse* v. *Bickford*, 29 N. H. 471. In the partition the committee represented all the heirs, and the establishment of lines and bounds by them between the several shares had the same effect as if by the heirs themselves. *Griffin* v. *Bixby*, above cited, is directly in point to this case, in favor of the defendants.

2. In the partition the north-east corner of share No. 8 is fixed at the north-west corner of share No. 7, and that corner is described as "a stake and stones." The stake and stones are on the line claimed by the defendants, and not including the *locus in quo*. But the divisional line between the Clough purchase and lot No. 70, as claimed by the plaintiffs, is entirely different from that claimed by the defendants on which the stake and stones are, and includes the *locus in quo*. Hence arises an ambiguity in the description, if the divisional line referred to in the

partition is to be considered as claimed by the plaintiffs. In such cases of conflicting descriptions, and in cases of descriptions including two or more monuments or bounds, either of which may answer, parol evidence is admissible to show which was intended. *Claremont* v. *Carleton*, 2 N. H. 373; *Clough* v. *Bowman*, 15 N. H. 511; *Peaslee* v. *Gee*, 19 N. H. 273. And that construction must be adopted which best comports with the intention of the parties and the circumstance of the case. *Bell* v. *Sawyer*, 32 N. H. 72, and cases cited. In this partition, "the stake and stones," being more particular and certain than the general description of the divisional line, must govern. *Bowman* v. *Farmer*, 8 N. H. 402; *Marsh* v. *Marshall*, 19 N. H. 307; *Frost* v. *Spaulding*, 19 Pick. 445; *Dawes* v. *Prentice*, 16 Pick. 435; *Benedict* v. *Gaylord*, 11 Conn. 332, cited in *Drew* v. *Drew*, 28 N. H. 510; *Wendell* v. *The People*, 8 Wend. 190. In *Peaslee* v. *Gee*, 19 N. H. 273, the description as "the homestead farm" was held to govern, as against boundary lines by adjoining lands; and in this case it is very clear that the committee intended the stake and stones to be on the line, because they were set up by them for that purpose. With regard to the real intention of the committee in the partition, there is no room for doubt. They actually run out and established the lines and bounds, as claimed by the defendants.

3. The question of estoppel by the defendant Clough's deed does not arise in this case. The only question is as to the true construction and operation of that deed. With regard to the intention of the parties to the deed, there can be no doubt. The circumstances that the parties were also parties to the partition, both being heirs of Nehemiah Clough, and each having a share set off to him in that partition; that the deed was made after the partition, and the particular agreement of the description in the deed with that in the partition, would of themselves afford a strong presumption of the intention to convey by

Sanborn *v.* Clough.

the deed only what the grantor had by the partition. The concluding part of the description in the deed, however, places this beyond doubt—" and is the same which fell to me as my share from the estate of my father," &c. And apart from the particular description in the deed, fixing the north-east corner of the premises at the stake and stones, as before mentioned, which is the bound claimed by the defendants, and not including the *locus in quo*, this general description at the close, under the circumstances, should be held to govern. See *Peaslee* v. *Gee*, 19 N. H. 273, before cited.

SARGENT, J. The position taken by the defendants, that in cases of conflicting descriptions of land in the same deed, and in cases where there are two or more monuments or bounds, either of which will answer, parol evidence is admissible to show which was intended; and that in such cases that construction must be adopted which best comports with the intention of the parties and the circumstances of the case, is no doubt well sustained by the authorities which they cite in support of it. But the trouble in this case is, that until the parol testimony, which the defendants propose to introduce, is admitted, there is no occasion for the application of the rule, as, by the terms of the plaintiff's deed, or the report of the committee, taken alone, there are neither conflicting descriptions of the land, nor does it appear that there are at any point two bounds or monuments, so as to furnish any ground for the introduction of parol evidence. Parol evidence is also admissible to show a latent ambiguity in a deed. In such case it may be made to appear that there are two lines or bounds which will, either of them, answer the description, both of which will alike answer the call in the deed; and then further evidence as to which of these was intended would be competent. But it must appear that they will both answer the call in the deed. But with our

view as to the construction of the deed in this case, no door is opened for the introduction of parol evidence upon that ground.

Where the monuments referred to in a deed are fixed and definite, its extent is to be determined by a reasonable construction of its terms, and in such a case extrinsic evidence of intention, as an independent fact, is clearly inadmissible, for the purpose of proving that any thing was intended differing in substance from what was described. *Peaslee* v. *Gee*, 19 N. H. 273. The committee set off to Cyrus Clough, No. 7, being a part of the Thomas Clough purchase, so called, beginning at the east corner of one hundred acre lot, No. 1, thence north three hundred and one rods, *to the southeast corner of the fourth division lot, No.* 70; thence *westerly on the divisional line between said purchase and said lot*, so far as to make seventy-six rods directly west from said corner, to a stake and stones; thence south, &c. In setting off lot No. 8 the same committee ran up to this stake and stones, the corner of lot No. 7, and thence ran *westerly on the line of said purchase* to the one hundred acre lot, No. 3.

Now, from both these descriptions, where are the stake and stones referred to? Evidently in the line between

the Thomas Clough purchase and lot No. 70 in the fourth division. It is placed distinctly there in setting off both lots, 7 and 8. The north-east corner of lot No. 7 is the south-east corner of said lot No. 70, wherever or whatever that may be. Then, to get the north line of lot No. 7, they run westerly on the divisional line between these two lots, wherever that may be, to a stake and stones; and lot No. 8 begins at this stake and stones, and thence runs westerly on the same divisional line, or the line of the Clough purchase, &c. The only sentence or expression that can be doubtful, is the one used in describing the north line of lot No. 7; and it will be observed that if this line be run as the defendants claim, due west, &c., but should start from the true corner of lot No. 70—the only point it can start from according to the report—it will not come near the stake and stones claimed by the defendants as being the north-west corner of lot No. 7. The only way to reach that last mentioned bound is to turn off at another stake, before reaching the corner of lot No. 70, at a bound not called for in the report, but one entirely different from anything mentioned in the report. It will be observed that the easterly line of lot No. 7 runs due north; a line, therefore, starting from any point in this line and running due west would be at right angles with it. Now the committee do not say that the north line of lot No. 7 is to run directly west, or any given distance, but beginning at the south-west corner of lot No. 70, thence running *westerly on the divisional line,* &c.; and this line being a crooked line, the points of compass would vary necessarily, and the distance must depend upon the number of curves and the amount of curvature in this line; but following this divisional line westerly, and varying as the line varied, they ran so far as to make seventy-six rods measured on a straight line, and not only so, but on a line running at right angles with the east line of said lot No. 7. Whether the committee knew the exact location of this divisional

line all the way, or any of the way, is not at all material;
they evidently intended to bound lot No. 7 upon the north
by that line; and whatever the length of the line might
be, as measured upon the line itself, and varying as that
might vary, it was to be extended far enough westerly so
that the north end of the lot should be seventy-six rods
wide, measured upon a straight line drawn at right angles
with the east line of said lot. This was probably, and it
would seem unquestionably the intention of the commit-
tee. But admit that the committee supposed that the
stake and stones were due west from the south-west corner
of lot No. 70, and they intended by that expression to
describe the location of the stake and stones rather than
to fix the width of lot No. 7 at the north end; and sup-
pose, upon examination, that it should not be found to be
due west from said corner of lot No. 70, so as to make a
discrepancy here between the description in the deed and
the position of the bounds upon the land, there would be
no occasion for the parol testimony to explain this discrep-
ancy; for the law does it in advance, and without the aid
of such testimony. For the *divisional line* between certain
lots of land, or the line of land of A. B., or the line of
land formerly owned by Abial Cooper (*Breck* v. *Young*,
11 N. H. 485), is held to be a monument which will con-
trol courses, as in this case, and distances, too, if necessary,
so that whatever the course from one corner to the other,
the stake must be in the divisional line of these lots,
according to the report and deed; and any evidence that
would show that this bound is not in the divisional line,
would simply contradict the plain, fair and unequivocal
terms of the report of the committee and the defendant's
deed, and is most clearly inadmissible. All the evidence
which the defendants offer, if admitted, would not affect the
case, because it fails to show any latent ambiguity in the
report or deed. The evidence shows no line that will
answer the description, nor any bound that will answer

the call in the report or deed, but something different and contradictory.    The fact that the committee ran one line or another; that they run a wrong line instead of the right one, as the line between the purchase and lot No. 70, could amount to nothing, since, when they came to make their report, they have made no reference whatever to any such line as ran by them, but have simply fixed the divisional line of the lots as the one by which these parties are to be bounded.

But suppose this testimony to be admitted, and that it did make it doubtful which of the two lines or bounds was intended, so that it would be competent to inquire into the intentions of the committee who made the partition, can there be a doubt that they intended to bound the parties on the true line of the lot?    Did they intend to divide all the land of Nehemiah Clough among his heirs? or did they intend to divide most of it, but to leave some narrow strips along the margin of this lot for the heirs and others to quarrel about?    Did they intend to do what they were expressly sent to do—to divide the land, or at least this purchase lot, or did they only intend to divide a part of it?    And suppose they did run many lines, they may, like cautious men, have been suspicious that they had not in all cases found the true line; and so they said nothing about the lines they had run—made no allusion whatever to them in their report.    Not wishing to mislead others by any mistakes they may have made, when they came to make report they only mention the lines of the lots, and corners of the lots where the lands adjoin other lots, thus avoiding the possibility of mistake or misconstruction.    But suppose they stuck a stake in the wrong place by some mistake, is that to avoid the report, or even to throw doubt upon the description contained in it, when, from all the other parts of the report, the thing is made certain?    Nothing is better settled than that where land is found, answering generally the description in the deed,

but incorrectly described in some one or more particulars, the law rejects the erroneous description, if enough remains clearly to ascertain the land.

But suppose that, after inquiry as to the intentions of the parties, no satisfactory answer could be obtained, and the line was still in doubt?   The case finds that Philip C. Clough, this defendant, was the one to whom this lot No. 8 was originally set off; that he conveyed it by a warrantee deed, giving the same general description of the land as that given in the report, and that this land having passed through different hands is now owned by the plaintiff; so that these parties stand in the relation of grantor and grantee, the plaintiff being the grantee.   In *Clough* v. *Bowman*, 15 N. H. 504, we find a reiteration of a general principle as old as the common law, that when all other means of ascertaining the true construction of a deed fail, and the doubt still remains, that construction must prevail which is most favorable to the grantee, and of course most unfavorable in this case to the grantor.   So that, in any light in which the subject can be viewed, it would seem impossible to come to any other conclusion than that there must be

*Judgment for the plaintiff.*